# In the United States District Court for the Southern District of Georgia Savannah Division

| | |
|---|---|
| ROBERT KING AND SHONTA KING, individually and as next of kin of minor RASHEEN KING,<br><br>Plaintiffs,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC.,<br><br>Defendant. | 4:25-cv-45 |

## ORDER

This action is before the Court on a motion for summary judgment filed by Defendant Select Portfolio Servicing, Inc. Dkt. No. 41. The motion has been fully briefed, dkt. nos. 41, 46, 47, 50, and is ripe for review. For the reasons set forth below, this motion, dkt. no. 41, is **GRANTED**.

## BACKGROUND

Viewed in the light most favorable to the Plaintiffs, the following undisputed facts have been presented to the Court.[1] In 2004, Plaintiff Robert King obtained a thirty-year mortgage to purchase a home in Rincon, Georgia (the "Loan"). Dkt. No. 41-2

[1] At the summary judgment stage, the Court must view all facts in the light most favorable to the non-moving party and draw all inferences in its favor. Tolan v. Cotton, 572 U.S. 650, 657 (2014).

¶ 1. Mr. King executed a note in connection with the Loan. Id. ¶ 2. The pertinent terms of the note required Mr. King to make monthly payments to the holder of the note, imposed late fees if payments were untimely, and provided that overdue and/or missed payments put him in default. Id. In the case of default, the note permitted the lender to, after notice to Mr. King, declare the full amount of the Loan due and payable plus late fees and attorneys' fees. Id. Mr. King executed a security deed to secure the Loan. Id. ¶ 4. The security deed granted the lender the power of sale if Mr. King defaulted on the Loan. Id. ¶ 5.

Defendant Select Portfolio Servicing, Inc. ("SPS") has serviced the Loan since 2020. Id. ¶ 8. Mr. King stopped making his monthly payments on the Loan from December 2023 to August 2024. Id. ¶ 10. Mr. King's failure to make these nine payments, each of which independently granted SPS the right to foreclose, led SPS to exercise its right to accelerate the Loan and foreclose on Mr. King's property at a sale scheduled for September 3, 2024. Id. ¶ 11.

In early July 2024, SPS properly notified Mr. King of the foreclosure sale. Id. ¶¶ 12, 14. SPS sent letters to Mr. King in April, May, June, and August of 2024 informing him that the Loan was in default and that he could cure his delinquency by paying the listed total reinstatement amount to avoid foreclosure. Id. ¶¶ 24, 25. The reinstatement quote increased with each letter, and

the final reinstatement quote in the August 20, 2024 letter was $10,490.64. Id. ¶ 26. Each letter informed Mr. King that making past due payments alone was insufficient to cure the default and that he was also required to pay late fees and costs pursuant to the terms of the note. Id. ¶ 27. These letters also instructed Mr. King that any payment made by wire must reference the customer account number, customer name, and property street address. Further, the letters instructed King that failure to include all of this information could result in delayed application of the funds. Id. ¶ 28. Finally, these letters confirmed that SPS could apply partial payments to the Loan balance. Id. ¶ 29.

On August 20, 2024, the same day Mr. King received the letter containing the $10,490.64 reinstatement quote, he called SPS about the Loan. Id. ¶ 32. During this call, an SPS agent told Mr. King that his reinstatement amount showed a balance of $6,991.55 to cure the default. Dkt. No. 41-1 at 146–47. Mr. King then asked the agent to confirm the reinstatement amount, noting that he had just received an email showing a higher reinstatement quote of $10,402.83. Id. at 147. The SPS agent responded that "if there's something somewhere else, I don't have any idea. Because sometimes it do – because you know, between the two systems, one might be done updated; the other one might not have – you know what I am saying." Id. at 148. The SPS agent went on to say that SPS wouldn't turn down the $6,991.55 payment, that SPS would work with Mr. King

on any reinstatement fees, and that he was "pretty sure" SPS could find a way to work out something with Mr. King if he could come up with the lower payment. Id. at 152-53, 156.

Mr. King called SPS again on August 29, 30 and 31, 2024. Dkt. No. 41-2 ¶¶ 36, 37, 42. During the August 30th call, Mr. King told the SPS agent that he believed he could pay "$6,900-and-something dollars," to which the agent responded that Mr. King should "pay according to the reinstatement quote amount." Id. ¶¶ 39, 40. During the August 31st call, Mr. King told an SPS agent that he had wired just over $6,900 the day before, to which the agent responded "[t]hat is not enough to get it reinstated." Dkt. No. 41-1 at 176.

On August 30, 2024, Mr. King's business, Money Team Transport, LLC initiated a wire transfer to SPS for $7,000.00. Dkt. No. 41-2 ¶¶ 44, 48. August 30th was the Friday before Labor Day, and the foreclosure sale was set for the next business day on Tuesday, September 3rd. Id. ¶ 45. This wire payment was transferred to SPS on the morning of the foreclosure sale. Id. ¶ 46. The wire listed Mr. King's parents' home address rather than the address connected to the Loan and lacked any information connecting the payment to Mr. King's loan, account number, or his property address. Id. ¶ 48. SPS was therefore unable to identify and apply the partial payment of $7,000 to the Loan prior to the foreclosure sale. Id. ¶ 53.

The foreclosure sale occurred as scheduled on September 3, 2024, and a third party bought Mr. King's property at auction. Id.

¶ 54. After the sale, SPS located the wire and applied the entire $7,000 to the Loan balance. Id. ¶ 55. Over three months after the sale, on December 11, 2024, the third-party purchaser, SPS, and Mr. King executed an Agreement Rescinding Foreclosure Sale, vacating the foreclosure sale. Dkt. No. 41-1 at 236-39. SPS claims that this agreement was reached in the interest of providing good customer service and not as an admission of error. Dkt. No. 41-2 ¶ 56.

After the foreclosure sale but before rescission, the third-party purchaser began renovating the property. Id. ¶ 57. Since the rescission, Mr. King has not moved back into the home or sold it, despite understanding that he may do so. Id. ¶ 58. Aside from the $7,000 partial payment made August 30, 2024, Mr. King has not made any further payments on the Loan. Id. ¶ 60.

Mr. King's wife, Shonta King, and their son, Rasheen King, lived on the property with Mr. King prior to foreclosure. Id. ¶¶ 15, 16. Neither Shonta King nor Rasheen King were owners of the property or a borrower under the Loan. Id. ¶¶ 16, 17. Nonetheless, Mr. and Mrs. King bring this action individually and as next of kin and on behalf of minor Rasheen King. Dkt. No. 1. In their complaint, Plaintiffs bring claims for wrongful foreclosure, tortious interference with property rights, conversion, attorneys' fees and litigation expenses, and punitive damages. Dkt. No. 1.

**LEGAL STANDARD**

The Court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Facts are considered "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252. Additionally, to survive a motion for summary judgment, the "party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings." Walker v. Darby, 911 F.2d 1573, 1576 (11th Cir. 1990). "Rather, its responses . . . must set forth

specific facts showing that there is a genuine issue for trial." Id. at 1576-77.

## DISCUSSION

Defendant SPS moves for summary judgment on all of Plaintiffs' claims. Dkt. No. 41. Plaintiffs oppose the motion. Dkt. Nos. 46, 47. As an initial matter, neither the complaint nor any of Plaintiffs' briefs provide support for any assertion that Shonta and Rasheen King have standing to pursue claims against the Defendant. The Defendant is entitled to summary judgment on all such claims asserted by Shonta and Rasheen King.

### I. Wrongful Foreclosure

Count One of Plaintiffs' complaint asserts a claim for wrongful foreclosure. Dkt. No. 1 ¶¶ 59-67. SPS moves for summary judgment on this claim on the grounds that it did not breach any duty to Mr. King and did not cause any harm to Plaintiffs resulting from the foreclosure. Dkt. No. 41-1 at 9-10.

To maintain a wrongful foreclosure claim, Plaintiffs must establish "(1) a legal duty owed to it by the foreclosing party, (2) a breach of that duty, (3) a causal connection between the breach of that duty and the injury it sustained, and (4) damages." Canton Plaza, Inc. v. Regions Bank, Inc., 732 S.E.2d 449, 454 (Ga. Ct. App. 2012) (citing Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004)). "Breach of a legal duty requires a violation of a foreclosure statute." Sheely v. Bank of

Am., N.A., 36 F. Supp. 3d 1364, 1376 (N.D. Ga. 2014) (citing McCarter v. Bankers Trust Co., 543 S.E.2d 755, 758 (Ga. Ct. App. 2000)).

A foreclosing creditor has a statutory duty to fairly exercise the power of sale. O.C.G.A. § 23-2-114. When the creditor does not comply with its statutory duty to fairly exercise the power of sale, the debtor may sue for wrongful foreclosure. Mills v. JP Morgan Chase Bank, N.A., No. 1:11-CV-3709-JEC-LTW, 2012 WL 4086508, at *6 (N.D. Ga. July 23, 2012), report and recommendation adopted, 2012 WL 4075634 (Aug. 14, 2012).

Plaintiffs allege that SPS breached this duty by proceeding with the foreclosure sale despite receiving Mr. King's $7,000 wire payment. Dkt. No. 46 at 11. Plaintiffs also argue that SPS acted unfairly and in bad faith by delaying rescission beyond the thirty-day statutory window for rescission after a sale. Id. These arguments are addressed in turn.

### A. Proceeding with Foreclosure Despite Payment

The Court first looks to Georgia law addressing when a lender acts unfairly and in bad faith by foreclosing despite oral promises to forbear. The Court then turns to Plaintiffs' argument that the oral promise to forbear is legally binding, notwithstanding the statute of frauds, because Mr. King detrimentally relied on the promise.

**1. Georgia Case Law**

"Generally, promises to forbear on foreclosure or to modify a mortgage are not contractually binding unless supported by additional consideration." Williams v. Encore Credit Corp., No. 1:20-CV-1297-TCB-JSA, 2020 WL 7496845, at *4 (N.D. Ga. Sept. 28, 2020) (citing Mills v. JP Morgan Chase Bank, N.A., No. 1:11-CV-3709-JEC-LTW, 2012 WL 4086508, at *8 (N.D. Ga. July 23, 2012), report & rec. adopted, 2012 WL 4075634 (Aug. 14, 2012) ("Such promises are not binding and unenforceable where not accompanied by contract requirements of mutuality, certainty, or consideration.")), report and recommendation adopted, 2020 WL 7496836 (Oct. 27, 2020).

Georgia case law makes clear that violating a non-binding promise to delay an otherwise proper foreclosure does not necessarily constitute wrongful foreclosure. The analysis turns on whether the lender induced the debtor into default in the first place. On one hand, a wrongful foreclosure claim may arise when a creditor induces the debtor's default by instructing the debtor to take certain actions and then forecloses based on the default resulting from those actions. In Joseph v. Federal Home Loan Mortgage Corporation, for example, the creditor allegedly instructed the debtor in writing to stop making payments to qualify for a mortgage modification and then foreclosed based on those missed payments. No. 1:12-CV-01022-RWS, 2012 WL 5429639, at *2

(N.D. Ga. Nov. 6, 2012). The court found that, if true, the creditor's actions would constitute failure to exercise the power of sale fairly and in good faith. Id. at *3.

On the other hand, a wrongful foreclosure claim does not lie where the debtor is already in default when the lender subsequently promises not to foreclose. For example, in Mills, after providing proper notice of foreclosure to a homeowner in default, a creditor allegedly promised the homeowner she would not be foreclosed upon and that foreclosure letters she received were sent in error. 2012 WL 4086508, at *5. The creditor subsequently foreclosed despite this promise. Id. The court rejected the wrongful foreclosure claim, noting that it found no authority indicating that a creditor's failure to honor oral promises to not go forward with foreclosure gives rise to a wrongful foreclosure action where statutorily required notice of foreclosure is otherwise given. Id. at *6; see also Ford v. CitiMortgage, Inc., No. 1:12-cv-3808-RWS, 2013 WL 4955875, at *3 (N.D. Ga. Sept. 12, 2013) ("Plaintiffs' claim for wrongful foreclosure based on an alleged oral agreement to postpone foreclosure proceedings fails as a matter of law.").

Similarly, in Morrall v. CitiMortgage, Inc., the lender allegedly told a debtor who was already in default on his home loan that it would not foreclose while the debtor's loan modification agreement was being considered. No. CV 114-086, 2015 WL 800173, at *1 (S.D. Ga. Feb. 25, 2015). The lender proceeded

with foreclosure anyway. Id. The debtor's wrongful foreclosure claim failed as a matter of law. Id. at *4. The court acknowledged that foreclosure resulting from a lender's affirmative misrepresentations that induce a plaintiff into default amounts to an unfair exercise of the power of sale. Id. But the court recognized that the lender in that case did nothing to prevent the debtor from making payments on his loan and the debtor "caused his own damages by failing to pay." Id. Therefore, the debtor could not establish a causal connection between the lender's purported breach of good faith and fair exercise of the power of sale and the loss of his home. Id.

Here, the SPS agent's statements did not "lure Plaintiff[s] into a default in the first place, as in Joseph." Williams, 2020 WL 7496845, at *5. Plaintiffs were already in default and had received the statutorily required notice of foreclosure before an SPS agent indicated that payment of the overdue $6,991.55 alone may be sufficient to stop the sale. Because the agent's statements did not induce Mr. King into default, Plaintiffs cannot rely on the agent's statements as a basis for their wrongful foreclosure claim.

**2. Statute of Frauds**

Alternatively, Plaintiffs argue that the SPS agent's representation that $7,000 would likely be sufficient to stop the foreclosure sale is a binding promise. Dkt. No. 46 at 13. SPS

responds that Georgia's Statute of Frauds applies, which requires any modification to a home loan contract to be in writing. Dkt. No. 41-1 at 13–14; dkt. no. 50 at 7–8.

Georgia's Statute of Frauds renders unenforceable any alleged oral agreement to forbear on foreclosure or to modify the terms of a mortgage. Williams, 2020 WL 7496845, at *4; see also O.C.G.A. § 13-5-30 ("Any contract for sale of lands, or any interest in, or concerning lands" must be in a signed writing.); Kabir v. Statebridge Co., LLC, No. 1:11-cv-2747-WSD, 2011 WL 4500050, at *7 (N.D. Ga. Sept. 27, 2011) ("Oral and unwritten agreements regarding interests in lands; to include reinstating a mortgage, refinancing a mortgage, or forbearing from foreclosure proceedings; are unenforceable under the Georgia Statute of Frauds.").

Plaintiffs respond that Mr. King's reasonable reliance on the SPS agent's oral promises to King's detriment precludes application of the Statute of Frauds. However, Mr. King's reliance on one SPS agent's equivocal representations that he was "pretty sure" SPS could work with a lower payment was unreasonable as a matter of law. "The fact that any agreement to modify a mortgage . . . must be in writing also precludes a finding of justifiable reliance on any oral representation." Bitterfield v. PHH Mortg. Corp., No. 1:17-CV-1060-MHC, 2017 WL 6996373, at *4 (N.D. Ga. Oct. 26, 2017) (citing Adamson v. Maddox, 142 S.E.2d 313, 315 (Ga. Ct. App. 1965) (holding that because oral representations concerning

the sale of land are not enforceable, a plaintiff is not justified in relying upon them)).

### B. Thirty-Day Statutory Period for Rescission

Plaintiffs' third theory—that rescission after the thirty-day period set forth O.C.G.A. § 9-13-172.1 demonstrates bad faith—is without merit. Dkt. No. 46 at 11. This provision limits damages that a creditor owes to a purchaser at foreclosure if it exercises its right to rescind the sale. It does not create duties owed from the creditor to the debtor and thus cannot form the basis of a wrongful foreclosure claim. See Canton Plaza, Inc. v. Regions Bank, Inc., 732 S.E.2d 449, 454 (Ga. Ct. App. 2012) (In an action for wrongful foreclosure, the plaintiff must show "a legal duty owed to it by the foreclosing party.").

Defendant SPS is entitled to judgment as a matter of law on Plaintiffs' wrongful foreclosure claim. Its motion for summary judgment as to Count One is **GRANTED**.

## II. Tortious Interference with Enjoyment of Property

In Count Two, Plaintiffs bring a state law claim for tortious interference with enjoyment of property under O.C.G.A. § 51-9-1. Dkt. No. 1 ¶¶ 68-77. Plaintiffs allege that SPS interfered with their enjoyment of the property by wrongfully permitting the foreclosure sale. Id. ¶¶ 69-72. Plaintiffs further allege that the third-party purchaser's subsequent renovations to the house are a proximate result of SPS's wrongful conduct. Id. ¶¶ 73-74. SPS moves

for summary judgment on this claim on the grounds that SPS's conduct was lawful and that none of its agents or employees ever physically entered Mr. King's property. Dkt. No. 41-1 at 16–18.

O.C.G.A. § 51-9-1 codifies the common law tort of trespass. See Tacon v. Equity One, Inc., 633 S.E.2d 599, 603 (Ga. Ct. App. 2006). A claim under this statute arises when one "unlawfully interferes" with another's "right of enjoyment of private property." O.C.G.A. § 51-9-1. Additionally, to maintain a trespass action under O.C.G.A. § 51-9-1, "Plaintiffs must allege and show that they were the true owners of the Property or that they were in lawful possession at the time of the trespass." Id. (citing Smith v. Forrester, 274 S.E.2d 101, 102 (Ga. Ct. App. 1980)).

**A. SPS's Conduct was not "Unlawful"**

For the reasons outlined above, SPS's foreclosure proceedings *were* lawful. Therefore, any alleged interference with Plaintiff's enjoyment of property was not unlawful and cannot form the basis of an action under O.C.G.A. § 51-9-1. Because Plaintiffs' trespass claim is entirely dependent on their wrongful foreclosure claim, it must also fail. See Duncan v. CitiMortgage, Inc., No. 1:13-CV-1493-TWT, 2014 WL 172228, at *8 (N.D. Ga. Jan. 15, 2014) (citing Simpson v. Jones, 186 S.E. 558 (Ga. 1936) (concluding that petition attacking foreclosure proceedings stated no cause of action for trespass by reason of removal of mortgaged property from petitioner's premises, where foreclosure proceedings were not void

for any reason assigned)), aff'd, 617 F. App'x 958 (11th Cir. 2015).

Additionally, after SPS sold the property at a foreclosure sale on September 3, 2024, Plaintiffs were no longer the true owners nor were they in lawful possession of the property. The purchaser at a foreclosure sale is the sole owner unless and until a foreclosure sale is set aside. See Peterson v. Merscorp Holdings, Inc., No. 1:12-CV-00014-JEC, 2012 WL 3961211, at *4 (N.D. Ga. Sept. 10, 2012) (citing Bellamy v. F.D.I.C., 512 S.E.2d 671, 674 (Ga. Ct. App. 1999) ("The purchaser [of] a foreclosure sale under a power of sale in a security deed is the sole owner of the property until and unless the sale is set aside."). Mr. King had no ownership or possessory rights in the property until the foreclosure was set aside on December 11, 2024.

### B. Physical Entry

SPS further argues that it cannot be liable for trespass because Plaintiffs do not allege that SPS's employees or agents ever physically entered Mr. King's Property. Dkt. No. 41-1 at 18. Plaintiffs respond that even though SPS did not physically enter Mr. King's property, SPS is liable for facilitating the third-party purchaser's entry and resulting damage to the property. Dkt. No. 46 at 19-20.

Even if one were to assume that SPS could be liable for facilitating the trespass of another through foreclosure, it is

not liable here because the foreclosure was lawful. Cf. Quasebarth v. Green Tree Servicing, LLC, 90 F. Supp. 3d 1373, 1383-84 (M.D. Ga. 2015) (Plaintiffs stated a claim for tortious interference with property rights against home loan servicer when a third-party purchaser entered the property following an *unauthorized* foreclosure).

Because the foreclosure was lawful, any resulting interference with property rights was also lawful. Therefore, SPS's motion for summary judgment on Count Two is **GRANTED**.

**III. Conversion**

In Count Three, Plaintiffs claim that SPS is liable for conversion for failing to apply Mr. King's $7,000 payment to the Loan to stop the foreclosure. Dkt. No. 1 ¶¶ 78-83. SPS argues, among other things, that this claim fails because it is undisputed that this payment was applied to the Loan. Dkt. No. 41-1 at 21-23.

Conversion is "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to her rights. The very essence of conversion is that the act of dominion is wrongfully asserted." Habel v. Tavormina, 597 S.E.2d 645, 648 (Ga. Ct. App. 2004) (citation omitted).

Plaintiffs do not dispute that, following the foreclosure sale, SPS located the wire and applied the $7,000 payment to the Loan balance. Dkt. No. 41-2 ¶ 55. Instead, their claim is seemingly

based on SPS's failure to locate and apply the wire payment in time to stop the foreclosure sale. This argument, however, is unpersuasive. Mr. King failed to comply with instructions regarding how to label the wire, SPS received the payment the morning of the foreclosure sale, and the wire contained no information connecting the payment to the Loan. Id. ¶¶ 46, 48-53. This stands in stark contrast to the cases upon which Plaintiffs rely where the lender refused to apply payments toward a mortgage, despite repeated requests to do so. See, e.g., Stroman v. Bank of Am. Corp., 852 F. Supp. 2d 1366, 1378 (N.D. Ga. 2012) (claim for conversion existed where the plaintiff alleged that defendants held monthly mortgage payments in a sperate account rather than applying them to the loan balance to extract unlawful late fees and interest). SPS did not wrongfully assert dominion over the wire payment and is thus not liable for conversion.

In their response to SPS's summary judgment motion, Plaintiffs attempt to add a new conversion claim to include conversion of the fixtures in their home allegedly damaged by the third-party purchaser. Dkt. No. 46 at 21-22. However, it is well settled that a party cannot amend its pleadings in a response brief opposing summary judgment. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) (holding that a plaintiff cannot amend her complaint in a response brief because the defendant lacks notice of the new claim). Accordingly, the

Court will not consider Plaintiffs' new conversion of fixtures claim. Accordingly, SPS's motion for summary judgment on Count Three is **GRANTED**.

## IV. Attorneys' Fees, Litigation Expenses, and Punitive Damages

Plaintiffs also seek attorneys' fees, litigation expenses, and punitive damages. Dkt. No. 1 ¶¶ 84–87. "[A]wards of punitive damages and attorney fees are derivative of underlying claims; and where those claims fail, claims for punitive damages and attorney fees also fail." Nat'l Emergency Med. Servs., Inc. v. Smith, 889 S.E.2d 162, 173 (Ga. Ct. App. 2023) (citations omitted). Because the Court determined that Plaintiffs cannot prevail on their underlying substantive claims, their claims for attorneys' fees, litigation expenses, and punitive damages must fail. SPS's motion for summary judgment on Counts Four and Five is **GRANTED**.

## V. Emotional Distress

Finally, SPS moves for summary judgment on what it perceives as Plaintiffs' implied claim for intentional infliction of emotional distress. Dkt. No. 41-1 at 18–21. Plaintiffs respond that they do not bring an intentional infliction of emotional distress claim and instead seek to recover emotional distress damages by proving that the damages were proximately caused by an intentional tort. Dkt. No. 46 at 16–17. The Court will briefly address both arguments.

First, the complaint repeatedly alleges that Plaintiffs

suffered emotional distress as a result of the foreclosure. See, e.g., Dkt. No. 1 ¶¶ 41, 66, 77. A claim for emotional distress damages resulting from an intentional wrongful foreclosure action is treated as a claim for intentional infliction of emotional distress. McCarter v. Bankers Tr. Co., 543 S.E.2d 755, 758 (Ga. Ct. App. 2000) (citing Clark v. West, 395 S.E.2d 884, 886 (Ga. Ct. App. 1990)).

A claim for intentional infliction of emotional distress requires "intent to harm." Id. Plaintiffs allege only that they suffered emotional distress as a result of the foreclosure, see, e.g., dkt. no. 1 ¶¶ 41, 66, 77, but not that SPS intended to cause harm. Therefore, Plaintiffs cannot recover under an intentional infliction of emotional distress theory.

Second, Plaintiffs' claim for emotional distress damages fails because all other tort claims fail. Plaintiffs have not shown that SPS engaged in any tortious conduct causing them emotional harm. See Jones v. BAC Home Loan Servicing, LP Countrywide Home Loans Servicing LP, No. 1:10-CV-3268-JEC-RGV, 2011 WL 13319172, at *11 (N.D. Ga. Jan. 19, 2011) (dismissing plaintiff's claim for emotional distress, construed as a claim for intentional infliction of emotional distress, because plaintiff failed to show that defendant engaged in any tortious conduct), report and recommendation adopted sub nom. Jones v. BAC Home Loans Servicing, LP, 2011 WL 13319287 (Feb. 18, 2011).

Accordingly, Plaintiffs' claim for emotional distress, construed as an intentional infliction of emotional distress claim, fails. Defendant SPS's motion for summary judgment on this claim is **GRANTED**.

The undisputed record evidence, even viewed in a light most favorable to Plaintiffs, does not create any genuine issue of material fact on any of the claims in the complaint. When those facts are applied to the relevant case law, it is clear that the Defendant is entitled to judgment as a matter of law. Therefore, Defendant SPS's motion for summary judgment, dkt. no. 41, is **GRANTED** as to Counts I, II, III, IV, and V, as well as to the implied intentional infliction of emotional distress claim.

**CONCLUSION**

Based on the record and the parties' briefs, Defendant SPS's motion for summary judgment, dkt. no. 41, is **GRANTED** in its entirety. There being no claims remaining, the Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 29th day of September, 2026.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA